UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No.: 1:22-cr-00062 JLT |
|---|---|
| Plaintiff, | ORDER DENYING MOTION FOR RECONSIDERATION |
| v. | (Doc. 487) |
| ALMA GARZA, | |
| Defendant. | |

Alma Garza moves the Court to reconsider its order denying her motion to suppress. (Doc. 487) She contends the Court committed clear error in failing to suppress the evidence. Because the Court finds no error, the motion is **DENIED**.

I.   **Background**[1]

On Thursday, January 27, 2022, officers intercepted a telephone call between a known drug trafficker, Horacio Torrecillas and Ms. Garza, in which Torrecillas asked Ms. Garza to mail a package for him. (Doc. 188 at 15) Initially, Garza protested, because Torrecillas employed someone to mail packages for him. Id. Eventually she agreed to mail the package and travelled to the post office. Id. While there, Garza spoke again with Torrecillas in an intercepted call. Id. She told him that the package could not be delivered by the next day, but it could be delivered by Saturday. Id. She inquired

---

[1] The Court repeats an abbreviated description of the factual circumstances, from its original order, to ease review.

1

whether she should send the package in this manner despite the $75 cost. Id. at 16.  Torrecillas agreed, and Garza paid the money and mailed the package to be delivered to 1000 La Fonda Drive, Apartment H, Las Cruces, New Mexico[2]. Id.

Later that night, Torrecillas spoke to the recipient of the package and informed him, "I sent you that shit already." Doc. 188 at 16. The recipient told Torrecillas that he was opening a bank account and would send Torrecillas a debit card, so Torrecillas could withdraw the money, which would constitute payment. Id.

The next afternoon, on Friday, January 28, 2022, Torrecillas called Garza and asked her to "check the tracking on the shit." (Doc. 188 at 17) Garza responded, "check what?" Id. Torrecillas replied, "the tracking on the shit we sent." GARZA agreed to do so, but then she forgot to do it. A little while later, the recipient of the package texted Torrecillas and asked when the package would arrive. Id.  Torrecillas informed him that it would arrive either that same day or the day after. Id. Torrecillas said he'd check the tracking info and get back to him. Id.  Torrecillas contacted Garza and again asked her to check the tracking information because "they were asking." Id. Garza confirmed the package would arrive the next day, on Saturday. Id. Torrecillas reported this information to the intended recipient. Id.

While monitoring the phone calls noted above, on January 27, 2022, agents confirmed that the package was sent from the Hughes Avenue post office located in Fresno, that it weighed five pounds, three ounces and that it was due to be delivered to the address in Las Cruces, New Mexico on January 29, 2022. (Doc. 188 at 17) On Friday, January 28, 2022, at the request of investigating officer, HIS Special Agent Andres Varela, Postal Inspectors in El Paso, Texas intercepted the package and re-routed it back to Fresno. (Doc. 188 at 27) It was scheduled to arrive, and did arrive, on January 29, 2002. Id.

Varela asserts that he asked that the package be returned to Fresno because the process would be done quickly in Fresno "because a prosecutor familiar with the investigation, AUSA Justin Gilio,

---

[2] This same address was found on a co-conspirator's phone. The coconspirator confirmed in captured electronic contacts that he was sourcing the pills and was planning to have "blues" mailed to that address. (Doc. 188 at 12-14) "Blues," in drug traffickers' slang, refers to fentanyl pills. Id. at 8.

2

was available and ready to review the warrant and would submit it to a Magistrate Judge in the Eastern District of California over the weekend. I also knew that myself and other agents were ready and available to open the parcel when the judge signed the warrant. And I knew that if narcotics were seized from the parcel, my agency would be storing those drugs in Fresno and sending them to a Fresno-based laboratory for testing." (Doc. 207-1 at 2.) He based his belief that the search warrant could be obtained more quickly in Fresno on his experience seeking out-of-district warrants on at least five occasions. Id. He attested that there would be delay if he sought the warrant in the Texas court because it "would require securing the availability of a prosecutor in the other district and familiarizing him or her with the case. I also knew that this process could be further delayed by the need to contact law enforcement agents in the other district (either to serve as an affiant on the search warrant application or to assist in the execution of the search warrant). I also knew that the warrant would then have to be reviewed and signed by a magistrate judge in the other district. I further believed that this process was likely to be delayed by the fact that the warrant application would not be ready for a prosecutor's and judge's review until over the weekend." Id.

Varela began drafting the warrant affidavit on Friday, January 28, 2022. (Doc. 207-1 at 3) He also reviewed and transcribed the wiretap interceptions and worked with Postal Inspectors to obtain information about other packages sent from Fresno to the La Fonda Drive apartment in New Mexico to support the warrant request. Id. On Saturday afternoon (January 29, 2022), the Assistant United States Attorney submitted the warrant package to the Magistrate Judge. Id. The Magistrate Judge swore out and signed the warrant the next morning (Sunday, January 30, 2022) at 10:19 a.m. Id. Once the warrant was issued, the agents opened the package and discovered what they recognized to be methamphetamine and cocaine. Id.

About two weeks after hearing argument on the motion to suppress, the Court issued an order denying the motion. (Docs. 218, 220) Because the Court had granted Ms. Garza's request to seal portions of the evidence upon which the motion was based and the order contained information that had been sealed, the Court issued the order under seal. (Doc. 220) Due to inadvertence, the clerk's office sent notice of the filing of the order to counsel but did not attach the order. Counsel did not appreciate that the order had issued until more than a year later, on September 23, 2023, when, after

their inquiry, the clerk's office served the order. The current motion for reconsideration was filed on May 17, 2024 (Doc. 487), approximately eight months after the motion was served.

## II. Analysis

"Although not expressly authorized by the Federal Rules of Criminal Procedure, motions for reconsideration are allowed in criminal cases." United States v. Jones, 916 F.Supp.2d 83, 86 (D.D.C. 2013). "No precise 'rule' governs the district court's inherent power to grant or deny a motion to reconsider a prior ruling in a criminal proceeding. Rather, the district court's authority to revisit a ruling on a suppression motion 'is within its sound judicial discretion.'" United States v. Lopez-Cruz, 730 F.3d 803, 811 (9th Cir. 2013) quoting United States v. Raddatz, 447 U.S. 667, 678 n. 6 (1980).

Local Rule 430.1(i) requires parties moving for reconsideration in criminal cases to demonstrate "what new or different facts or circumstances are claimed to exist that did not exist or were not shown upon such prior motion or what other grounds exist for the motion." "But as is true of motions for reconsideration in civil cases, motions for reconsideration in criminal cases are almost always denied when they rest on arguments or evidence the moving party previously raised or could have raised and denial would not cause manifest injustice." United States v. Davis, 2021 WL 1122574, at *2 (E.D. Cal. Mar. 24, 2021), *aff'd*, 2022 WL 1090945 (9th Cir. Apr. 12, 2022).

### i. The motion for reconsideration is untimely

Because there is no express rule allowing motions for reconsideration of an order issued in the criminal law context, there is, likewise, no specific rule that dictates the timeliness of a such a motion. *United States v. Jones*, 608 F.2d 386, 390 (9th Cir. 1979). "The Supreme Court, however, has held that a motion for reconsideration is timely at least 'when filed within the original period for review.' *United States v. Healy*, 376 U.S. 75, 78, 84 S.Ct. 553, 555, 11 L.Ed.2d 527 (1964)." *United States v. Jones*, 608 F.2d at 390. Without identifying a bright-line deadline as to the timing of a motion to reconsider, *United States v. Wardlow*, 951 F.2d 1115, 1116 (9th Cir. 1991), the Court upheld a determination that seeking reconsideration two weeks after the ruling on the motion to suppress was not timely, in light of the fact that the motion was made the day before trial was scheduled to begin and a jury was "standing by."

In this case, more than eight months passed between the time the Court served the order on the

motion to suppress and the defendant's filing of her motion for reconsideration. The explanation for the delay was simply that the attorney had not closely read the order until then. The government argues that Local Rule 430.1, which addresses motion for reconsideration in the criminal case context, references Local Rule 303 for the proposition that motions for reconsideration must be filed within 14 days. In any event, the Court is confident that in the absence of a changed circumstance, delay of eight months is too long. Thus, the Court **DENIES** the motion as untimely.

### ii. Even if the motion for reconsideration were timely, it fails to demonstrate reconsideration is appropriate.

Ms. Garza identifies no new law or facts or circumstances she could not have raised when she filed her motion originally. (Doc. 487) Rather, she argues the Court committed clear error in its ruling on her motion. Id. The Court disagrees.

In United States v. Hernandez,[3] 313 F.3d 1206, 1209–10 (9th Cir. 2002), the Ninth Circuit Court of Appeals held,

> A person who voluntarily deposits mail in the United States mail for delivery retains a limited possessory interest in the mailed item. See United States v. England, 971 F.2d 419, 420 (9th Cir.1992). "[T]he mere detention of mail not in [the addressor's] custody or control amounts to at most a minimal or technical interference with [the addressor's] person or effects, resulting in no personal deprivation at all." United States v. Place, 462 U.S. 696, 718 n. 5, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983) (Brennan, J., concurring) (quoting United States v. Place, 660 F.2d 44, 53 (2d Cir.1981), aff'd, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983)).

To detain a package, postal employees must have a reasonable and articulable suspicion based upon the totality of the circumstances that the package contains evidence of illegal activity. Hernandez, at 1210-1211. Officers are allowed "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" Hernandez, at 1211, internal citations omitted. If this suspicion is lawfully drawn, "detention, without a warrant, while an investigation was made" is "certainly justified." United States v. Van Leeuwen, 397 U.S. 249, 252 (1970).

In the weeks leading up to January 27, 2022, the officers had the information from the co-

---

[3] The Court held similarly in United States v. Aldaz, 921 F.2d 227, 229 (9th Cir. 1990). ["Postal authorities may seize and detain packages if they have a reasonable and articulable suspicion of criminal activity."]

1 conspirator that the coconspirator was planning to have fentanyl pills mailed to the Las Cruces
2 address. (Doc. 188 at 12) They intercepted the phone call from Torrecillas telling Garza to mail the
3 package to the Las Cruces address. (Doc. 188 at 15) They also had the phone calls between Torrecillas
4 and the intended recipient of the package in which Torrecillas said, "I sent you that shit already," and
5 in which the recipient told Torrecillas he would mail him a debit card, so Torrecillas could without
6 money from a bank account to pay for the package. *Id*. at 16. All of this constitutes reasonable
7 suspicion that there was contraband in the package.

8       In her motion for reconsideration, Garza argues, as she did in her original motion, that because
9 the officers had more than reasonable suspicion that the package contained contraband, they had to
10 obtain a search warrant rather than to detain it while obtaining a search warrant that would allow them
11 to search it. (Doc. 493 at 2-3) First, this argument is contrary to that urged in her original motion in
12 which she asserted, ". . . once probable cause to search or seize is established, officers may detain the
13 mailed package for a reasonable time while they seek a warrant (United States v. Leeuwen (1970) 397
14 U.S. 249, 250; United States v. Gill, supra at 929)." (Doc. 177 at 3)

15       Second, Garza's current argument is that when officers have only suspicion that a package
16 contains contraband, they may detain it, but when they have probable cause to believe the package
17 contains unlawful material, they may not detain it but must, instead, obtain a warrant before they may
18 detain it. The Court declines to adopt this position.

19       Ms. Garza relies upon United States v. England, 971 F.2d 419, 421 (9th Cir. 1992), for the
20 proposition that the postal inspectors were not allowed to re-route the package back to Fresno but had
21 to, instead, seek a warrant in Texas.[4] However, England does not support this position. Rather, in
22 United States v. Gill, 280 F.3d 923 (9th Cir. 2001), the Court found that the postal inspector acted
23 reasonably when he detained a suspicious package while conducting an investigation in California
24 (where the package was deposited for mailing), and then shipped the package to Washington (to a
25 location near to where the package was intended to be mailed) to allow the ongoing investigation

---

[4] Implicitly, then Ms. Garza concedes that the package could be removed from the stream of mail for the purpose of seeking a warrant, though does not explain why she believes Texas was the proper forum for that to occur. Texas is not where the package originated or was due to be delivered and was simply the location where the officer interrupted the package's voyage to New Mexico.

6

there. Id. at 928. The Court held reasonable suspicion existed, which justified the detention of the package. Id. The Court rejected the claim that delay in delivery of the package violated the Fourth Amendment. Id. at 929. The Court held, "this Court has stated that "the main Fourth Amendment interest in a mailed package attaches to the privacy of its contents, not the speed with which it is delivered." United States v. Hillison, 733 F.2d 692, 696 (9th Cir.1984) (nine hour delay reasonable) (citation omitted). See also Van Leeuwen, 397 U.S. at 253, 90 S.Ct. 1029 (29 hour detention of packages sent by first class mail not unreasonable); Aldaz, 921 F.2d at 229–31 (five day delay not unreasonable)." Id. The Court concluded, "Even with express mail, [the sender's] predominant interest was in the privacy of the package and not merely prompt delivery. On these facts, the delay was not unreasonable." Id.

In United States v. Beard, 16 F.4th 1115, 1116 (5th Cir. 2021), the defendant moved to suppress evidence found in a package he mailed from Houston, Texas to Hammond, Louisiana. Once the package arrived in Louisiana, they detained it and re-routed it back to Texas. *Id*. The officer explained that he thought that getting a search warrant in Louisiana would take longer than in Texas due to the need to have local people "get up to speed." *Id*. at 1117-1118. At the time, the officer thought that the package would arrive back in Texas in two days, but, in fact, it took five days to arrive. *Id*. at 1118.

On appeal, the defendant conceded that the original detention was permitted because it was supported by reasonable suspicion. Beard, at 1118. He argued, however, that the detention became an unlawful seizure when it was rerouted back to Texas, because investigatory efforts could have been made in Louisiana. *Id.* The court disagreed and held that the package "had extensive connections to Houston: it was mailed from a post office there, the sender (Beard) used the Houston post office frequently, and the investigation of Beard's drug-trafficking activity was being conducted by [the officer] in Houston. Moreover, [the officer] requested that the package be rerouted to Houston because he believed that there was no difference in the time it would take to obtain a warrant in Houston versus Hammond." Id. at 1121. Thus, despite Ms. Garza's argument to the contrary, she had no Fourth Amendment right to have the package held in Texas while Teas officers obtained a search warrant, nor may she complain that it was returned to California.

In addition, Ms. Garza reiterates many of the same arguments she raised in her original motion

7

but presses the Court to come to a different result.[5] The Court resists this invitation and notes that these arguments fail to meet the standards for a motion for reconsideration.

**ORDER**

Based upon the foregoing the Court **ORDERS** that the motion for reconsideration (Doc. 487) is **DENIED**.

IT IS SO ORDERED.

Dated:   **June 25, 2024**

UNITED STATES DISTRICT JUDGE

---

[5] Ms. Garza expands her reasoning for seeking an evidentiary hearing. She offers no explanation why these grounds were not offered in her original motion. At that time, she stated only that at an such a hearing, she would "cross-examine the government's witnesses." (Doc. 177 at 2) A motion to reconsider is not a second bite at the apple.